UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HENG GUO JIN,

                Plaintiff,

          v.                      Civ. No. 13-cv-6789 (CBA) (LB)

HAN SUNG SIKPOOM TRADING CORP. and
CHEL CHANG,

                Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................... 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................... 2

III. ANALYSIS .............................................................................................................................. 2

   A. Standard of Review ............................................................................................................ 2

   B. Jin's Claims for Overtime Wages Fail Because He was Exempt from the Overtime
      Requirements of FLSA and NYLL Under the Motor Carrier Act ...................................... 3

      1. *Background: The MCA Exemption* ............................................................................. 3

      2. *Jin is Not Entitled to Overtime Pursuant to the MCA Exemption Because HSST is a
         Motor Private Carrier and Jin Directly Affects the Safety of Operation of Motor
         Vehicles in Interstate Commerce* ................................................................................. 5

   C. Jin's Minimum Wage Claims Fail Because There is No Dispute that He was Paid At Least
      Minimum Wage For All Hours Worked ............................................................................. 8

   D. Jin's Claims for Liquidated Damages and Extended FLSA Statute of Limitations Fail
      Because HSST Acted in Good Faith and Not Willfully ................................................... 10

      1. *HSST's Good Faith Belief that Jin was Exempt under the MCA Exemption Bars
         Liquidated Damages under the FLSA* ....................................................................... 10

      2. *Because Jin Offers No Evidence that HSST "Willfully" Violated the FLSA or NYLL, His
         Claims for Three-Year Statute of Limitations on FLSA Claims and Liquidated Damages
         on NYLL Claims Must be Dismissed* ........................................................................ 11

   E. Jin's NYLL Claims Fail To the Extent Jin Worked Out of State Because NYLL Does Not
      Have Extraterritorial Effect .............................................................................................. 13

IV. CONCLUSION ..................................................................................................................... 15

**TABLE OF AUTHORITIES**

Cases

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. 2010) .................................................................................. 3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................... 2, 3, 9

*Bilyou v. Dutchess Beer Distributors, Inc.*,
  300 F.3d 217 (2d Cir. 2002) ............................................................................. 6, 7, 11

*Ford v. Gannett Co.*,
  No. 03-CV-6454-CJSMWP, 2005 WL 3115846 (W.D.N.Y. Nov. 18, 2005) ............. 8

*Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*,
  865 F.Supp.2d 257 (E.D.N.Y.2012) ............................................................... 3, 4, 5, 7

*Hammell v. Paribas*,
  No. 90 Civ. 4799 (JSM), 1993 WL 426844 (S.D.N.Y. Oct. 22, 1993) .................... 14

*Holtz v. Rockefeller & Co.*,
  258 F.3d 62 (2d Cir. 2001) ........................................................................................ 2

*Janus v Regalis Const., Inc.*,
  11-CV-5788 ARR VVP, 2012 WL 3878113 (E.D.N.Y. July 23, 2012) .................. 11

*Jimenez v. Servicios Agricolas Mex, Inc.*,
  742 F. Supp. 2d 1078 (D. Ariz. 2010) ..................................................................... 14

*Kadden v. VisuaLex, LLC*,
  910 F Supp 2d 523 (S.D.N.Y. 2012) ....................................................................... 10

*Karic v. Major Automative Companies Inc.*,
  992 F.Supp.2d 196, 204 (E.D.N.Y. 2014) ............................................................... 11

*Kuebel v. Black & Decker Inc.*,
  643 F.3d 352 (2d Cir. 2011) .................................................................................... 11

*Magnuson v. Newman*,
  No. 10 Civ. 6211 (JMF), 2013 WL 5380387 (S.D.N.Y. 2013) ......................... 13, 14

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008) ...................................................................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................. 3

*McClellan v. Smith*,
  439 F.3d 137 (2d Cir. 2006) ...................................................................................... 3

*McGuiggan v. CPC Int'l, Inc.*,
  84 F. Supp. 2d 470 (S.D.N.Y. 2000) ..................................................................... 7, 8

*Morris v. McComb*,
    332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947) ........................................................................ 7

*O'Neill v. Mermaid Touring Inc.*,
    968 F.Supp. 2d 572 (S.D.N.Y. 2013) ............................................................................... 13, 15

*Peikin v. Kimmel & Silverman, P.C.*,
    576 F.Supp.2d 654 (D.N.J.2008) ........................................................................................ 14

*Saunders v City of New York*,
    594 F Supp 2d 346 (S.D.N.Y. 2008) ................................................................................... 12

*Shortt v. Congregation KTI,*,
    2013 U.S. Dist. LEXIS 4094 (S.D.N.Y. Jan. 9, 2013) ............................................................ 3

*Williams v. Tri-State Biodiesel, L.L.C.*,
    No. 13 CIV. 5041 GWG, 2015 WL 305362 (S.D.N.Y. Jan. 23, 2015) .................................. 12

Defendants Han Sung Sikpoom Trading Corp. ("Han Sung") and Chel Chang ("Mr. Chang") (together, "HSST") move for partial summary judgment dismissing those claims in plaintiff Heng Guo Jin's ("Jin" or "Plaintiff") complaint ("Complaint") alleging minimum wage violations (counts one and three) and overtime violations (counts two and four) under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL").

## I. PRELIMINARY STATEMENT

Han Sung sells and transports food items from it receives from various locations, including Korea, at its New York warehouse, to various restaurants and grocery stores in New York and other states in the northeast region. Mr. Chang is Han Sung's owner. Before any of the claims at issue in this case came to arise, Mr. Chang dutifully registered Han Sung with the U.S. Department of Transportation to use delivery trucks across state lines and then carefully educated himself, through counsel, about the applicable pay practices and other issues in setting up his business. Jin was hired as a delivery route driver, to make deliveries from the Han Sung warehouse to restaurants in New Jersey and Massachusetts, as a salaried employee based on Mr. Chang's reasonable understanding of the motor carrier exemption to overtime requirements and minimum wage requirements under state and federal law.

Jin claims that HSST violated overtime and minimum wage provisions of both the FLSA and NYLL. Having taken no depositions through the close of discovery and only minimal paper discovery, Jin hopes to go to trial on these and other claims. HSST moves for partial summary judgment on the minimum wage and overtime claims because they patently fail as a matter of law. First, Jin's overtime claims fail because the uncontroverted evidence demonstrates that Jin was an exempt employee under the motor carrier exemption. Second, Jin's minimum wage claims under federal and state law fail as a matter of law because, by even a favorable

construction of Jin's own testimony, it is a mathematical fact that Jin's compensation was greater than minimum wage for all hours he worked. Third, Jin is not entitled to liquidated damages nor to a three-year statute of limitations under the FLSA because the undisputed evidence in the record demonstrates that HSST acted on its good faith belief that Jin was exempt from overtime and did not willfully violate the FLSA or NYLL. Finally, in the alternative, this Court should dismiss Jin's overtime and minimum wage claims (if any remain) to the extent they are based on hours Jin worked outside of this state because New York Labor Law does not have any extraterritorial effect.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

For purposes of this motion, HSST respectfully refers this Court to Defendants' Rule 56.1 Statement of Undisputed Material Facts submitted herewith pursuant to Local Civil Rule 56.1 (hereinafter "R.56.1"), which is hereby incorporated by reference, as well as the accompanying Declaration of Chel Chang, dated February 13, 2015 ("Chang Decl.") and Declaration of Roshni Chaudhari, dated February 13, 2015 ("Chaudhari Decl.") and exhibits attached thereto.

## III. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists when a "reasonable jury could return a verdict for the nonmoving party," and "[a] fact is 'material' if it 'might affect the outcome of the suit under governing law. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

To defeat a summary judgment motion, the nonmoving party must do "more than simply show that there is metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). In opposing a motion for summary judgment, the plaintiff may not rely upon "conclusory assertions, mere denials or unsupported alternative explanations of fact," but instead "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Anderson*, 477 U.S. at 256-57; *Shortt v. Congregation KTI*, 2013 U.S. Dist. LEXIS 4094, at *17 (S.D.N.Y. Jan. 9, 2013) (citing *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008)).

### B. Jin's Claims for Overtime Wages Fail Because He was Exempt from the Overtime Requirements of FLSA and NYLL Under the Motor Carrier Act

As explained in detail below, Jin falls squarely within an exemption from FLSA and NYLL's overtime requirements known as the Motor Carrier Act ("MCA") exemption ("MCA Exemption"). As such, Jin's claims for any failure to pay overtime necessarily fail and must be dismissed.

#### 1. *Background: The MCA Exemption*

The MCA Exemption arises from a distinction in jurisdiction between the Department of Labor and Department of Transportation. The FLSA—and by following suit, NYLL—carved out from its overtime requirements those employees who fall within the jurisdiction of the Secretary of Transportation's ("SoT") authority for establishing "qualifications and maximum hours of service." 29 U.S.C.A. § 213(b)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (stating that employees shall be paid overtime subject to exemptions under FLSA).[1]

---

[1] *See also*, *e.g.*, *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 45 (E.D.N.Y. 2010) ("[M]otor carrier exemption relieves employers of the overtime obligations of the FLS and NYLL."); *Fox v. Commonwealth*

3

The SoT's jurisdiction to prescribe such "qualifications and maximum hours of service" exists pursuant to the Motor Carrier Act for, among others, employees of a "motor private carrier." 49 U.S.C. § 31502(b)(2). A "motor private carrier" is defined as an employer "transporting property by motor vehicle" when:

> **(A)** the transportation is as provided in section 13501 of this title;
> **(B)** the person is the owner, lessee, or bailee of the property being transported; and
> **(C)** the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102.² The "transportation" requirement in subparagraph (A) of this motor private carrier definition is satisfied when transportation of property occurs on a "public highway" between a place in one state and a place in another state. 49 U.S.C. § 13501; *see also* 49 U.S.C. § 31502(a) (stating such transportation is also a general jurisdictional requirement applicable to SoT's authority to regulate motor private carriers).

While these requirements establish what it means to be a "motor private carrier" for purposes of the MCA Exemption, to be exempt from overtime, it must also be true that the *employee* of the motor private carrier "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on public highways of passengers or

---

*Worldwide Chauffeured Transp. of NY, LLC,* 865 F.Supp.2d 257, 268-69 (E.D.N.Y. 2012) (holding NYLL and federal courts have applied FLSA exemptions including the motor carrier exemption to state Labor Law Claims).
² Between 2005 and June 6, 2008, Congress had amended the definition of "motor carrier" and "motor private carrier" to require transportation by "*commercial* motor vehicle" rather than, as before 2005 and after 2008, just "motor vehicle." Because Jin's Complaint was filed on December 3, 2013, this definition is applicable only for approximately 6 months' of his NYLL claims, which have a six-year statute of limitations. *See* Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users or 'SAFETEA–LU' ("SAFETEA–LU"). Pub.L. No. 10959, § 4142, 119 Stat. 1144, 1747 (2005); SAFETEA–LU Technical Corrections Act ("TCA"). Pub.L. No. 110244, § 305, 122 Stat. 1572, 1620 (2008). A "commercial motor vehicle" was defined as, inter alia, one that weighs at least 10,001 pounds or has such a gross vehicle weight rating. 49 U.S.C. § 31132(1)(A). The 10,001 pounds or more requirement for "commercial" vehicles does not affect the analysis here, because Jin indisputably used a commercial vehicle every day and was more than merely "likely to be called on" to work on such a commercial vehicle. R.56.1 ¶¶ 5-6, 18; *Fox,* 865 F.Supp.2d at 267-68 (finding plaintiff was an "employee" under MCA Exemption where employee was "likely to be called on" to drive commercial vehicle, regardless of the number of hours actually driven in such vehicles).

4

property" in interstate commerce. 29 C.F.R. § 782.2(a); *Fox,* 865 F.Supp.2d at 265-66 (discussing "employee" under MCA Exemption).

Thus, as summarized by federal regulations, to qualify for the MCA Exemption from overtime requirements: (i) the employer must be within the jurisdiction of the Secretary of Transportation by virtue of operating as a . . . motor private carrier," such as an employer that transports property it owns for sale in interstate commerce on public highways, and (ii) the employee must be engaged in activities that affect the safety of operation of motor vehicles transporting property in interstate commerce. 29 C.F.R. § 782.2(a)-(b)(2).

### 2. *Jin is Not Entitled to Overtime Pursuant to the MCA Exemption Because HSST is a Motor Private Carrier and Jin Directly Affects the Safety of Operation of Motor Vehicles in Interstate Commerce*

Although FLSA exemptions are narrowly construed, the MCA exemption is more than easily satisfied in this case. First, HSST is a "motor private carrier" because: 1) HSST transports property by motor vehicles on a public highway between states; 2) HSST is the owner of the property being transported; and 3) the property transported by HSST is for sale and in furtherance of a commercial enterprise. *See* 49 U.S.C. § 13102 (defining motor private carrier). Second, as a driver, Jin undeniably engaged in—and, indeed, is a quintessential example of an employee who engages in—activities "directly affecting the safety of operation of motor vehicles in the transportation on the public highways." 29 C.F.R. § 782.2(a).

HSST falls well within the plain-language definition of a "Motor Private Carrier" under the MCA Exemption, and the facts supporting this conclusion are uncontestable. There is no doubt that each of the following required elements is satisfied here:

> **(A)** HSST engaged in transportation covered by section 13501 of this title: on a public highway between places in different states
> **(B)** HSST owns the property being transported; and
> **(C)** HSST's food items were transported for sale and to further a commercial enterprise.

5

*See* 49 U.S.C. § 13102, 13501 (definition of motor private carrier and jurisdiction under 13501). First, the transportation conducted by HSST occurs on a "public highway" in between states. As HSST's delivery driver, Jin drove from New York to New Jersey twice a week every week, and went from New York to Massachusetts once every other week. R.56.1 ¶¶ 13-14. He also noted that he drives through Connecticut to reach Massachusetts. *Id.* ¶ 15; *see also id.* ¶ 16 (deliveries in Connecticut).[3] He regularly took public highways throughout many of his trips, such as Interstate 495, the Triborough Bridge (Interstate 278), George Washington Bridge, and Whitestone Bridge (Interstate 678). *Id.* ¶¶ 17-18. Second, it is indisputable that HSST owns the food items that Jin transported. *Id.* ¶ 4. And, lastly, it also cannot be disputed that the food items transported by Jin were being transported for sale to restaurants and grocery stores, which furthers HSST's own commercial business and the commercial businesses of its customers. *Id.* ¶¶ 2, 10.

    HSST's status as a "motor private carrier" is thus so plain that it is difficult to elucidate further. Courts have rarely spent such time illustrating or examining self-evident legal determinations like those presented here, and, in fact, have found more legally-ambiguous facts sufficient under the MCA Exemption requirements. For example, in *Bilyou*, the Second Circuit found the MCA Exemption applicable in circumstances significantly similar to but more borderline than those here. *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217 (2d Cir. 2002). In *Bilyou*, the defendant sold and made deliveries of beer and other beverages from its warehouse to customers such as restaurants and supermarkets. *Id.* at 220. Its "route drivers" loaded trucks according to "load sheets" prepared by the employer and delivered the products as

---

[3] HSST also meets the various interstate commerce requirements for the MCA Exemption by virtue of its foreign commerce. Section 13501 covers not only transportation between states, but also between the U.S. and a place in a foreign country to the extent the transportation is in the United States. 49 U.S.C. 13501(1)(B). Here, the food items are imported from Korea to be transported in various states in the U.S. R.56.1 ¶ 3.

6

purchased by customers within New York State. *Id.* The Second Circuit affirmed the lower court's finding that the MCA Exemption applied to the drivers, additionally holding that exemption's interstate commerce requirement was met simply because the drivers picked up empty containers from customers within the state but which became a "part of the continuous movement of those goods in interstate commerce." *Id.* at 225. Similarly, one court easily found the MCA Exemption applicable for a muffin-making company whose drivers delivered muffins that had been purchased within New York, holding that the employer fell within the "literal definition" of motor private carrier. *McGuiggan v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470, 483 (S.D.N.Y. 2000) (finding interstate commerce requirement satisfied because the muffins were products in interstate commerce since they were made in New Jersey before being placed in a New York warehouse for within-state delivery by the drivers).

And while it is easy to conclude that HSST is a "motor private carrier," it is even easier to conclude that delivery drivers such as Jin are employees of motor private carriers who "directly affect the safety of operations of motor vehicles" in the transport of property in interstate commerce. Indeed, it is nearly black-letter law. "Drivers" are classified as one of four classes of employees who engage in work that affects the safety of operations of motor vehicles. 29 C.F.R. § 782.2(b)(1) ("The U.S. Supreme Court has accepted the Agency determination, that activities of this character are included in the kinds of work which has been defined as the work of drivers, driver's helpers, loaders, and mechanics"); *see also Fox*, 865 F.Supp.2d at 266 (recognizing drivers are one broad category of employees under MCA Exemption). Jin's primary responsibility was as a driver and spent numerous hours each day driving, often across state lines. R.56.1 ¶ 10. This undoubtedly subjects him to the MCA Exemption. *Morris v. McComb,* 332 U.S. 422, 430, 68 S.Ct. 131, 92 L.Ed. 44 (1947) (holding full-time drivers are

7

"within the definition of that class of work" that the Secretary may regulate); *Bilyou*, 300 F.3d at 220, 225 (finding MCA Exemption where "route drivers" delivering ordered items from warehouse even where they assisted in loading trucks); *McGuiggan*, 84 F. Supp. 2d at 483 (finding MCA exemption applied to "distributors/drivers," even who "perform[] other duties"); *Ford v. Gannett Co.*, No. 03-CV-6454-CJSMWP, 2005 WL 3115846, at *6 (W.D.N.Y. Nov. 18, 2005) (finding MCA exemption where manager spent 20-50% of his time delivering newspapers as one of his four major duties).

Because HSST and Jin fit squarely within the MCA Exemption, there can be no genuine issue of material fact as to the applicability of the MCA Exemption here and all FLSA and NYLL claims for overtime must be dismissed.

### C. Jin's Minimum Wage Claims Fail Because There is No Dispute that He was Paid At Least Minimum Wage For All Hours Worked

Even viewing Jin's evidence in the light most favorable to him, his testimony regarding hours worked and pay received leaves no mathematical uncertainty that he was paid at least the minimum wage for all hours worked. Because of this, his claims for violations of the minimum wage requirements under the FLSA and NYLL must be dismissed.

No fact finder would find credible that Jin worked more than 65 hours per work week— this was his testimony on at least three occasions and his attorney's representations to the Court. R.56.1 ¶¶ 21-25 (testifying repeatedly to approximately 13-hour work days for five days per week and his counsel representing his work week as about 64.5 hours). At the undisputed salary he received of $600 per week, R.56.1 ¶¶ 12, 65 hours of work represents an approximately $9.23

rate per hour. This is well above the $7.25 and $7.15 federal and state minimum wage rates in effect throughout Jin's employment.[4]

Furthermore, even accepting Jin's most extreme, inconsistent testimony as to his hours worked, he testified to having worked 15 hours and 20 minutes on his New York delivery days, R.56.1 ¶¶ 35-37, 16 hours and 20 minutes on his New Jersey delivery days (twice per week), *id.* ¶¶ 13, 38-40, and 14 hours and 20 minutes on his Boston delivery days (once per two weeks), *id.* ¶¶ 14, 41-43. Thus, his busiest week is those that he worked three days in New York and two days in New Jersey, and no evidence indicates that he ever worked more than a total of 78 hours and 40 minutes on those weeks. At a compensation rate of $600 per week, this reflects an hourly payment of approximately $7.62 per hour, which, again, is well in excess of even the $7.25 highest minimum wage rate in effect during his employment.

Accordingly, counts one and three alleging violations of the minimum wage laws must be dismissed.[5]

---

[4] The federal minimum wage rate was $7.25 from 2010 – 2013, the only years available for recovery under the FLSA's maximum three-year statute of limitations. New York's minimum wage rate was $7.15 from 2007-2009 and $7.25 from 2010-2013, the only years available for recovery to Jin under NYLL's six-year statute of limitations. Historical federal and state minimum wage rates are easily accessible through the U.S. Department of Labor at http://www.dol.gov/whd/state/stateMinWageHis.htm. *See also* Chaudhari Decl., Exh. A ¶¶ 35, 50 (identifying minimum wages and laws).

[5] Even if Jin were to submit an affidavit to conveniently declare now, at this belated juncture, that he had in fact worked well in excess of 79 hours on some weeks, he will fail to defeating summary judgment on these claims because in light of the repeated testimony to having worked hours significantly less than that, no reasonable fact finder could find that Jin was not paid at least minimum wage for all hours worked. *See Anderson*, 477 U.S. at 256-57 (holding to oppose summary judgment plaintiff cannot rely on mere denials but set forth "significant, probative evidence").

9

### D. Jin's Claims for Liquidated Damages and Extended FLSA Statute of Limitations Fail Because HSST Acted in Good Faith and Not Willfully[6]

#### 1. *HSST's Good Faith Belief that Jin was Exempt under the MCA Exemption Bars Liquidated Damages under the FLSA*

Jin's claim for liquidated damages under the FLSA must be dismissed because there is incontrovertible evidence of HSST's good faith belief that Jin was exempt under the MCA Exemption. 29 U.S.C. § 260 (stating courts may disallow liquidated damages for employer's actions taken in "good faith" and with "reasonable grounds" for belief it was in compliance with laws).

The irrefutable evidence[7] is Mr. Chang registered his vehicle with the U.S. Department of Transportation, obtained a registration number for the use of his motor vehicles, learned about the MCA Exemption from Department of Transportation workers, individually consulted with legal counsel specifically with respect to payment of his drivers and proper wage practices, and independently researched the issue by reviewing pertinent parts of the FLSA statute and conferring with other similarly situated employers to learn of their pay practices. R.56.1 ¶¶ 44-53. Such diligent efforts by HSST to comply with the FLSA compels a finding that HSST acted in "good faith" and with "reasonable grounds" for its reliance on the MCA Exemption. *See*, *e.g.*, *Kadden v. VisuaLex, LLC*, 910 F Supp 2d 523, 532 (S.D.N.Y. 2012) (holding belief that graphics consultants were exempt was in good faith because other similar employees in industry were paid as exempt, employer consulted with attorney, and did independent research on Department of Labor website). HSST's reasonable grounds for reliance on the MCA Exemption are further

---

[6] Insofar as Jin's minimum wage claims above are not dismissed, HSST also argues that HSST acted in good faith and not willfully as to the minimum wage requirements, given the hours that Jin worked and the pay he received. *See* R.56.1 ¶¶ 12, 51, 54. Even by Jin's own testimony, it appears certain that he did receive minimum wage pay, and, thus, it is difficult to see how HSST could have failed to comply in good faith or willfully. *See supra* Section 2.C (demonstrating minimum wage allegations' failure to state a claim).

[7] Since no representative of Han Sung nor Mr. Chang were deposed, the only evidence in the record as to HSST's good faith is Mr. Chang's own declaration.

evidenced by the fact that, as explained above, the MCA Exemption's plain language appears to be tailored to businesses just like Han Sung's, so much so that even the Second Circuit has held the exemption applicable in exceptionally similar circumstances. *See Bilyou*, 300 F.3d 217.

Because there is ample, undisputed evidence of HSST's good faith and reasonable grounds for its reliance on the MCA Exemption, this Court should hold that liquidated damages under the FLSA are not warranted here.

        2.    *Because Jin Offers No Evidence that HSST "Willfully" Violated the FLSA or NYLL, His Claims for Three-Year Statute of Limitations on FLSA Claims and Liquidated Damages on NYLL Claims Must be Dismissed*

There is no evidence in the record that HSST willfully violated the FLSA or NYLL—to the contrary, as shown above, HSST attempted in good faith to comply with applicable wage and hour laws. A finding of willfulness under the FLSA and NYLL, the polar opposite of a good faith finding, requires a showing that HSST "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" law. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (referring to FLSA and holding that NYLL willfulness standard "does not appreciably differ" from FLSA standard); *see also*, *e.g.*, *Janus v Regalis Const., Inc.*, 11-CV-5788 ARR VVP, 2012 WL 3878113, at *6 (E.D.N.Y. July 23, 2012) report and recommendation adopted, 11-CV-5788 ARR, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012) ("Notwithstanding their differences in wording, the FLSA and NYLL tests parallel one another.").

There is simply no evidence from which a jury could find "reckless disregard" or known violations of the FLSA or NYLL. Not only can Jin not genuinely rebut the incontrovertible evidence that HSST made conscientious and diligent efforts to comply with the law, Jin cannot demonstrate that HSST acted on the opposite end of the spectrum, with *intent* to *violate* the law. "Willfulness" means knowingly or deliberately violating the law and voluntarily disregarding one's obligations to comply. *See Karic v. Major Automotive Companies Inc.*, 992 F.Supp.2d

11

196, 204 (E.D.N.Y. 2014) (finding willful violations of NYLL where employer had been investigated by DOL twice and ordered to pay back wages both times and to attend compliance seminar and employer consulted with counsel and still continued its violations).

Jin cannot show willfulness in HSST's actions as he cannot "point[] to [] testimony from [] employees, documents, or anything else that would allow a trier of fact to find that defendants' alleged violations of the FLSA's overtime provision were willful." *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 CIV. 5041 GWG, 2015 WL 305362, at *19-20 (S.D.N.Y. Jan. 23, 2015) (finding no willfulness). At best, Jin claims that his employer was aware he worked past 6 p.m. and that he asked his employer for additional compensation, which falls woefully short of an adequate showing of willfulness. *See Saunders v City of New York*, 594 F Supp 2d 346, 358-59 (S.D.N.Y. 2008) (finding no willfulness where plaintiffs "offered no evidence" of reckless disregard by employer "apart from the contested existence of the violations themselves"); *Williams,* 2015 WL 305362, at *19 ("A violation does not rise to the level of 'willful' merely because the employer knew of the potential applicability of the statute, as it would be 'virtually impossible for an employer to show that he was unaware of the Act and its potential applicability.'").

The record shows that HSST's were anything *but* willful. Jin's claims under the FLSA must be limited to two years and any claim for liquidated damages under the NYLL for minimum wage or overtime violations must be dismissed.

### E. Jin's NYLL Claims Fail To the Extent Jin Worked Out of State Because NYLL Does Not Have Extraterritorial Effect

Finally, this Court should dismiss Jin's overtime and minimum wage claims under NYLL (counts three and four) to the extent that they are based on Jin's time spent laboring outside of the boundaries of New York because New York Labor Law does not have extraterritorial effect.[8]

"It is well-settled in New York that a New York statute shall not operate outside of New York unless expressly stated otherwise." *O'Neill v. Mermaid Touring Inc.*, 968 F.Supp.2d 572, 578 (S.D.N.Y. 2013). New York Labor Law contains no such language evincing an intent to have extraterritorial application. To the contrary, Article 19 of the NYLL, governing Jin's overtime and minimum wage claims, is prefaced by a "Statement of Public Policy" stating that its purpose is to address low wages of persons employed *in* the State of New York. N.Y. Lab. Law § 650; *see also Magnuson v. Newman*, No. 10 Civ. 6211 (JMF), 2013 WL 5380387 at *5 (S.D.N.Y. 2013) (denying extraterritorial application of NYLL upon review of Statement of Public Policy); *O'Neill*, 968 F.Supp.2d at 578 ("The purpose of the laws are to protect workers laboring in New York.").

To this end, courts have denied the application of New York's wage and hour laws to compensation for work performed outside of New York State, just as this Court should do here. In *O'Neill*, this court considered this very issue and held that the work performed by music artist Lady Gaga's personal assistant was not subject to NYLL even though the assistant was domiciled in New York and argued that her work outside New York was temporary. 968 F.Supp.2d at 578. The *O'Neill* court reiterated the sound, long-established rule that a New York statute will not operate outside of New York *unless expressly stated otherwise*, and, to uphold

---

[8] Although counts five and six of the Complaint allege NYLL violations, Defendants move only to dismiss counts three and four at this time, to the extent they have not already been dismissed, because spread-of-hours claims operate materially differently than overtime and minimum wage laws and Jin's count six for "failure to pay wages" remains largely indecipherable.

13

that law, concluded that NYLL had no extraterritorial effect to protect the personal assistant while she was assisting her employer while traveling on tour. *Id.* The court correctly zeroed in on the fact "the crucial issue is where the employee is 'laboring,'" not where she may be living, domiciled, or other irrelevant factors. *Id.* at 579. *See also*, *e.g.*, *Magnuson*, 2013 WL 5380387 at *5 (declining extraterritorial application of NYLL for wage payments of plaintiffs producing television show in D.C. when producer was incorporated in NY); *Hammell v. Paribas*, No. 90 Civ. 4799 (JSM), 1993 WL 426844 at *2 (S.D.N.Y. Oct. 22, 1993) (denying extraterritorial application of NYLL relating to wages denied in Japan).

This is not a rule that is unique to New York, of course—each state, not intending to overstep its bounds with regard to state sovereignty, finds its jurisdictional limits tied to its geographic boundaries and to the work conducted "within" those boundaries. "This limitation has been repeatedly exercised in cases brought by current residents and out-of-state plaintiffs against out-of-state employers, with courts consistently holding that the claim was governed by the law of the state where the conduct occurred." *Peikin v. Kimmel & Silverman, P.C.*, 576 F.Supp.2d 654, 657 (D.N.J. 2008) (discussing extraterritorial limitation on employment laws); *see also*, *e.g.*, *Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078, 1099 (D. Ariz. 2010) (declining to apply California laws for time the plaintiffs spent working in lemon fields in Arizona rather than California because "where the work takes place is the critical issue").

Here, the "crucial" fact that Jin "labored" regularly and frequently in New Jersey and Massachusetts, out-of-state, is undisputed. R.56.1 ¶¶ 13-17. Jin's time spent working in New Jersey and Massachusetts, as such, are subject to the conflicting labor laws of those states. *See*, *e.g.*, Mass Gen Laws Ann 151 § 1A (minimum wage is $9.00); NJ Stat Ann 34:11-56a4

14

(minimum wage is $8.00).  Most certainly, Jin's time working in other states cannot be subject to NYLL because of the well-established rule that NYLL has no extraterritorial effect.

While his work day may start and end in New York, this fact is nothing but an intuitively tempting red-herring.  That fact cannot justify a departure by a court from New York State's bright-line rule about its own jurisdiction, extending NYLL's jurisdiction where the state legislature chose not to and impeding on the jurisdiction of other sovereign states.  Indeed, the complex nature of interstate travel and state sovereignty is much why the MCA Exemption exists and why the U.S. Department of Transportation, not even Department of Labor, retains the authority to regulate the hours of employees such as drivers who work in interstate commerce.  Applying New York's Labor Law to Jin's time worked out-of-state would contravene state law, legislative intent, and their underlying public policies.  As the *O'Neill* court reinforced, the application of NYLL turns only on the crucial issue of where the employee is laboring.  In this case, for Jin, much of his labor was performed outside the bounds of New York.  Accordingly, that time must be excluded from Jin's claims for wage violations under the New York Labor Law and those claims must be partially dismissed.

## IV.   CONCLUSION

For the foregoing reasons, this Court must dismiss counts one through four of Jin's Complaint alleging overtime and minimum wage violations under the FLSA and NYLL.

**FORDHARRISON LLP**

By: */s/ Michael D. Yim*
    Michael D. Yim, Esq.
    Roshni Chaudhari
100 Park Avenue, Suite 2500
New York, NY  10017
Telephone: (212) 453-5900
Facsimile: (212) 453-5959

*Attorneys for Defendants Han Sung Sikpoom*
*Trading Corp. and Chel Chang*